is a veterinary practice regulation that is not directed at limiting speech. It regulates when veterinary treatment may be provided, not what a veterinarian may say. Because the requirement imposes only an incidental burden on Hines' professional speech, his First Amendment claims should be dismissed. Now, there may be an interesting question about whether a ban on specific professional advice would be subject to heightened First Amendment scrutiny, but this case doesn't provide an opportunity to answer that question. The physical examination requirement at issue merely requires veterinarians to form a veterinarian-client-patient relationship through a physical examination before the veterinarian engages in any action, spoken or nonspoken, that constitutes the practice of veterinary medicine. The practice here would mean, as to any specific animal or group of animals, it doesn't restrict in any way a veterinarian's ability to speak generally about any kind of medical issues. That's absolutely correct, Your Honor. It has to do with the practice of medicine with regard to a specific patient or client. And the laws are not directed at suppressing any particular message or advice whatsoever. I mean, to be blunt, a veterinarian may provide the very same advice after conducting an exam that could not be provided before the exam is conducted. And the relevant cases hold that content-neutral professional practice regulations like this one do not offend the First Amendment as a matter of law. The Fourth Circuit in Moore-King, which we cite in our brief, and the Eleventh Circuit in Wollschlager most recently, which is in our reply brief, they both follow Justice White's concurrence in law, which we also discuss, and that concurrence provided that general practice regulations... Talk about the facts for a moment. Exactly what was the veterinarian here doing that was the practice of veterinary medicine? Keeping in mind that practice here we're confined to giving advice with regard to the treatment of specific animals, not just talking about a general problem that dogs have with dysplasia or something of the sort and advising people in general about whatever. This thing sounds to me like the veterinarian has good sentiments to try to deal with a problem of inadequate medical care out there. But tell me where did he step over the line and start to violate? My understanding is Dr. Hines wants to be able to receive medical records from specific patients and be able to provide... What was the actual proposal? How would this work? Tell me. The laws restrict you from engaging in that specific advice. You cannot take specific medical records from a client and then respond to an inquiry and provide specific tailored medical advice in response to a telephone call or an e-mail that might be received from someone who wants specific advice for his or her animal. Veterinarians can talk to veterinarians. I've talked to my vet down in Blanco County, and he's talking to A&M because he wants the specialized assistance. Those doctors are talking to each other. That's okay, right? Well, if the advice is intended to help a specific patient, it's arguably... You're treating a horse and whatever the problem is, and the local vet wants to talk to the guy that's the king of eye doctors at A&M. So they talk back and forth, as doctors do. That's not... That may be on the fringe of what is actually restricted by the statute, but the board only investigates actions based on complaints that it receives. Tell me, what is it that you object to here? We don't object to anything. It's a First Amendment challenge to a statute that restricts speech. Facial challenge. Pardon? It's an as-applied and facial challenge. In the past, Dr. Hines was investigated and then ultimately punished for violating this particular statute, and that arose out of... This is outside of the record because we're on a motion to dismiss here, but there was a complaint that was filed by a doctor in New Hampshire that gave rise to the investigation. But, again, it's a prospective challenge for something that he wishes to do in the future. We don't know, other than he wishes to practice veterinary medicine, we don't know precisely what he wants to do. Some might know that you articulated standing in this case, which is going to be that he wishes to engage in a particular practice. What is that? Well, he asserts that he wants to violate the statute, which he has to do to have standing, but providing veterinary advice in response to specific inquiries that were emailed or telephoned to him by people that own animals, and he wants to be able to review their records, perhaps evaluate conflicting diagnoses from other veterinarians that have examined the animals, evaluate the propriety of prescriptions that have been given to these owners. And so those all constitute the practice of veterinary medicine. Just going back, the Fourth and Eleventh Circuits follow Lowe, the concurrence from Lowe, which provided that generally applicable practice regulations that only incidentally impact speech that occurs within a professional-client relationship, that those don't offend the First Amendment as a matter of law. And although this Court hasn't addressed the precise question at issue here, it did hold in Daley that an incidental restriction on professional speech that was caused by a doctor's suspension did not violate the First Amendment, again, as a matter of law. The physical examination requirement, is that how it's articulated? Yes, the statutes that... What does that mean? What is a physical examination? Well, the statutes require veterinarians to form a veterinarian-client-patient relationship before they engage in anything constituting the practice of veterinary medicine, and that veterinarian-client-patient relationship can't be formed without a physical consultation. And so, again, this case examined an incidental restriction on professional speech in Daley and held that it did not offend the First Amendment. And then also, in the Rourke and Hardy case and the Ford Motors case that we cite from this Court, both held that economic regulations that incidentally burden speech do not warrant heightened First Amendment scrutiny. At bottom, we're aware of no case that has subjected a professional practice regulation to heightened scrutiny simply because it has an incidental effect on the spoken aspects of practicing a profession. Hines' principal cases are a humanitarian law project... The rule that's being attacked requires the veterinarian to physically examine the animal before he gives advice. Yes, before giving advice or doing anything that constitutes the practice of veterinary medicine, which is defined. Even though he has a... I'm just trying to understand the breadth of that. You have a veterinarian that takes care of a particular barn, and he gets a call in the evening to go out, and the mayor's in full or something of that sort, and he's talking to the local trainer of what to do. He gives him advice. Now, he hasn't physically examined that animal himself, but he knows the barn and he knows the people. But you're saying that... The requirement can be satisfied by making timely visits to the premises on which the animal is kept as well. You don't have to necessarily physically touch the animal at issue. You can also satisfy this by forming a veterinary and client-patient relationship by making medically appropriate and timely visits to the premises on which the animal is kept. So that would also satisfy the statute before you can engage in the practice of medicine. Hines' principal cases, Humanitarian Law Project and Velazquez, each involved a content-based restriction on speech that was not limited to just regulating professional-client relationships. Those cases involved what was said. In other words, statutes that restricted what was said as opposed to when it was said. Now, adopting Hines' view and the district court's view of the speech clause would subject countless professional practice regulations to heightened scrutiny simply because the plaintiff invoked the First Amendment as opposed to, say, the Due Process Clause or the Equal Protection Clause. Virtually every professional regulation, from initial licensing to regulations governing the formation of client relationships to continuing education, each of these incidentally burden speech in that a professional cannot engage in the verbal aspects of practicing a profession until that requirement is satisfied. I mean, just taking CLE as a requirement, if a lawyer falls out of compliance with CLE, he or she can be suspended from practicing law, including all the spoken aspects of practicing law, but that doesn't turn the CLE requirement into a restriction on speech. And the physical examination requirement is no different. It's simply a prerequisite to practicing veterinary medicine. Subjecting these types of practice regulations to heightened scrutiny cannot be squared with the state's broad authority to regulate the professions. And so dismissal on the pleadings for this type of claim is appropriate. If there are no further questions, I can yield at this point. So you're saying rational basis review is what's required rather than some heightened scrutiny? I'd say that no scrutiny whatsoever, because the statute does not restrict speech. So you're saying the First Amendment doesn't apply at all to his claims? No, because the statute only incidentally affects speech, there is no First Amendment review. The Ninth Circuit takes a somewhat different approach and applies rational basis review to this type of claim. If rational basis applies, again, you can dismiss on the pleadings because the statutes are patently rational in that the legislature, the Texas legislature, simply followed the American Veterinary Medical Association's rebuttal rules in requiring veterinarians to conduct a physical examination before they engage in the practice of veterinary medicine. All right, you've saved time for rebuttal, Mr. Green. Mr. Rouse? Did I pronounce that right? Rouse, Your Honor. Rouse? Rouse, yes, Your Honor. Good morning, and may it please the Court. Jeff Rouse on behalf of Dr. Hines. Before I respond to the Board's specific arguments, let me take 30 seconds just to frame this case. The First Amendment applies because this case is just about two people talking to each other. That's it. There is zero conduct. Now, the government wants to force Dr. Hines to engage in conduct before he speaks, but forcing someone to do something before they speak doesn't transform that speech into conduct. It just means the government is burdening conduct. Now, the Court doesn't have to decide on this interlocutory appeal whether those burdens survive the First Amendment. The Court just needs to hold that the First Amendment applies, affirm the district court, and the district court can address the merits in the first instance on remand. Now, I gather that the government's argument is that the Veterinary Practice Act... Well, I thought you conceived that what your client wants to do would be the practice of veterinary medicine out of the act. It is, Your Honor. That's correct. There's no question... You've launched a facial challenge against that. No, Your Honor. Absolutely not. This isn't... I'm sorry. What is your challenge, then? This isn't... As applied to what? Correct. This challenge is as applied to the application of the physical exam requirement to conversations over the Internet. That's it. So it is speech without any conduct. Well, tell me... I've been trying to get some... Tell me exactly what he wants to do here. Yes, Your Honor. As detailed in the complaint, paragraphs 20 through 40, Dr. Hines... And this is what he did for 10 years, that Dr. Hines would speak to pet owners over the Internet. In some cases, the pet owners were overseas. They have no access to a veterinarian. And so he would give advice as best he could under the circumstances. In some cases, pet owners are under the care of veterinarians, but they may have conflicting diagnoses between different veterinarians, and they just want Dr. Hines' opinion to supplement the care they're getting from their primary veterinarians. Now, in addition, there are some cases in which Dr. Hines has been able to recognize that there's been a dosing error in medication. And so Dr. Hines says to the pet owner, you need to go back to your veterinarian, and you need to present them with this information and have that veterinarian consider whether or not the prescription ought to be modified. And so there's an entire host of things... ...dealing directly with laymen and not with another treating veterinarian. Yes, that's correct. But as the Ninth Circuit made clear in Conant v. Walters, just being a member of a licensed profession doesn't result in a surrender of First Amendment rights. In Conant v. Walters, doctors were talking to their patients about using marijuana for medical purposes. It does surrender to the extent that your profession has rules that describe the rules of the lawyers or for whatever, veterinarians, doctors. I respectfully disagree, Your Honor. The case here is not whether or not Dr. Hines ultimately wins on the merits. The question is whether the First Amendment applies. And we know from Humanitarian Law Project that the exact distinction that was at issue in that case, namely the distinction between general speech to the public and individualized technical advice to a specific person... We've said explicitly, for example, that doctors can be required to give advice, detailed advice to women seeking abortions, etc., with regard to the life of the fetus, and that it is not impaled at all, affected by First Amendment rights because it deals with the doctor-patient relationship which has historically been regulated in terms of informed doctrine, informed consent, etc., and there's never been a First Amendment constraint to that. Well, Your Honor, in this context, the Supreme Court made clear that courts are to distinguish between conduct and speech by looking at a very simple test. Namely, if the government is purporting to regulate conduct and the only conduct it can identify is speech, then that is a First Amendment issue. And that's exactly what the Supreme Court said in Humanitarian... Conduct that is communicative is speech. Exactly, Your Honor, which is why the First Amendment applies and why the district court should be affirmed. Describe to me what, uh... Why isn't this... Why... Well, I guess I don't understand your First Amendment argument. Go directly to that. Well, the First Amendment argument, Your Honor, is that all Dr. Hines did for 10 years was communicate with people. That's it. It's that simple. There is no conduct. Now, the government says that the Veterinary Practice Act operates generally as a restriction on conduct, and that's true. The Practice Act regulates things like performing surgery on animals. It regulates things like dispensing prescription medication to animals. But that is the exact argument that the Supreme Court rejected in Humanitarian Law Project at 561 U.S. at 28 through 29. The material support provision in Humanitarian Law Project was intended to prevent people from doing things, from giving cash and guns and bombs to terrorists. And the Supreme Court said, as applied to the plaintiffs in that case, the material support provision, despite being generally a regulation on conduct, is in fact operating as applied as a burden on speech, and thus the First Amendment applies. This case involves the exact proposition that the Supreme Court said constitutes First Amendment. And so suppose the First Amendment applies, then what are the restrictions that the state can impose? Are there any? Yes, Your Honor. All that means is that when the First Amendment applies, the state's restrictions have to comport with First Amendment analysis. And so under the facts of the case, the government will have to deduce evidence of its interests and will have to show reasonable tailoring under the relevant standard. Now, the district court concluded... Would that be a rational basis review, then? No, absolutely not, Your Honor. There is no rational basis review. It's a commercial speech, then. Actually, Your Honor, it could be. Are you doing this for free? I'm sorry? I thought... You conceded it's a practice of veterinary medicine. It is. And some courts have adopted the commercial speech standard. For example, the King case that was recently decided by the Third Circuit concluded on the basis of humanitarian law project, correctly, that professional speech that consists only of speech is subject to the First Amendment and decided to apply a standard of review analogous to the commercial speech test from Central Hudson. And it may be that under the facts of this case on remand, the district court will conclude that the appropriate standard is indeed intermediate scrutiny under Central Hudson, although that's irreconcilable with the Supreme Court's approach in humanitarian law project, Velazquez, and the Ninth Circuit's in Conant v. Walters. Let me talk about Daly for a moment and explain to the court why Daly doesn't control. Daly was a factually specific case about a state employee working in a state hospital. Now, this court extended the government broad latitude in that case precisely because the government was acting in its capacity as an employer. But this court made clear in Daly that nothing about its analysis sacrificed the First Amendment rights of Dr. Daly in his capacity as a private citizen. Dr. Hines is not a government employee. Being a member of a licensed profession doesn't make you a government employee. All he ever did was talk to other private people privately over the Internet. There is zero conduct. Under humanitarian law project, unambiguously, the First Amendment applies to that speech. Even if, facially, the physical exam requirement is constitutional because it operates, in many instances, simply to restrain or regulate actual conduct in the real world. And I would make it clear to the court also that the mere fact that the government invokes a particular interest or the government has a particular concern, as it details in the brief, that doesn't mean that speech moves out of the First Amendment. The Supreme Court in the United States v. Stevens made clear that courts do not determine whether the First Amendment applies simply through an ad hoc weighing of the benefits, social benefits and social costs. And this is not an incidental burden on speech. Let me just address that aspect of the government's argument. The government is interested in regulating the direct communicative impact of what Dr. Hines says. That is true as a matter of logic and it is true based on what they say in their brief, for example, in page 23. The board is concerned that Dr. Hines will say something to someone that will result in the spread of zoonotic disease or will result in inducing a false sense of security. Now, when the government is regulating the direct communicative impact of speech on a listener, the government is regulating speech directly. It is not regulating speech incidentally. The government is worried about bad advice exactly the way the federal government was concerned about bad medical advice in Conant v. Walters. The government was concerned that a doctor would say something to a patient, the patient would leave the office and go and start smoking marijuana. That fact didn't remove the conversations in Conant from the First Amendment. Likewise, they don't remove it here. Would the state be able to limit the kind of communications you're talking about if they came from persons with no medical training? No, Your Honor. The government's... Well, let me back up. Whether or not the state could ultimately limit those communications is really a merits question that would have to be decided on the facts of the case. The one thing that is clear is that if all a layperson were doing was talking to another layperson about an animal, that is speech under the test set forth by the Supreme Court and humanitarian law project to which the First Amendment would apply. Now, the government's interests may be different, but the nature of the government's interest as between regulating veterinarians and regulating laypeople don't determine in the first instance whether the First Amendment applies. So you agree that the state can't require a license to practice veterinary medicine? Yes, there's no question. How is your challenge any different from a challenge to a licensing requirement? Well, Your Honor, this is a specific challenge as applied to a statute that operates only in this context against speech. Now, the Veterinary Licensing Act generally regulates conduct, and so Dr. Hines has never suggested that merely engaging in speech while simultaneously engaging in conduct transforms the conduct into speech. He's never suggested that. So there's nothing a dentist could say while drilling a tooth, whether it's open wide or John Doe for president, that would turn drilling a tooth into speech. But this isn't that case because Dr. Hines isn't doing anything. He's just talking to someone. And the Supreme Court has made clear that when you're just... He's not permitted for doing that. Yes. He does it for free sometimes, and he also charged a nominal fee, although that doesn't matter to the First Amendment analysis, Your Honor. No, it's relevant, though, in terms of understanding what he's engaged in, what's he doing. It's not a lay... These aren't laypeople out there talking. This is a veterinarian calling on his experience. And that's what people are relying upon. And he says he's practicing veterinary medicine. What he wants to do is he wants to get First Amendment protections the way he practices veterinary medicine, which means that he doesn't have to have a direct patient-client contact and doesn't have to look at the animal. That's correct, that all Dr. Hines wants to do is speak. And as Judge Kaczynski pointed out in his concurrence in Conant v. Walters... Counsel, you're conceding he doesn't just want to speak, he wants to practice veterinary medicine. Well, there's no question that he satisfies the statutory definition of practice of veterinary medicine, but the whole point of the Supreme Court's decision in Humanitarian Law Project is that the government doesn't get to evade the First Amendment simply by labelling speech conduct. Justice Roberts said, if the only conduct or practice... We can call it practice in this case. If the practice, in quotation marks, that is triggering coverage under the statute consists only of speech, then the First Amendment applies. That is 561 U.S. at 28. And that makes it absolutely clear that when there is individualized technical advice is protected by the First Amendment and it's within the scope of the First Amendment's protections. What if the statute only said that you can't write a prescription for a particular animal without directly examining that animal? That would be fine, and there would be no First Amendment aspect to that because writing a prescription is actually an act with an immediate legal effect. In other words, that entitles a person in the real world to go out and obtain a controlled substance. And so there's no question that writing a prescription is a legal effect exactly the same way that signing a contract is. ...saying to them, giving advice as to what to do with the animal, how best to treat this particular illness. Well, the way the court characterizes the speech, if it's just speech, really doesn't matter to the First Amendment analysis. In humanitarian law... Does it matter that he's given advice as to how the animal should be treated? No, Your Honor, it doesn't, and the reason why... But that means the regulatory reach of the veterinary law is pretty narrow. No, I disagree, Your Honor, it's not. And the reason why is that the Veterinary Practice Act overwhelmingly regulates actual conduct. Now, in Dr. Hines' case, all he's doing is exchanging e-mails with people. Now, it might be that the content of those e-mails concerns individualized... But he's telling them to do something or don't do something with regard to those animals' treatment for illness, right? Precisely, exactly, and it is... As long as the doctor is just talking and he's not writing a prescription, then he's not practicing medicine. Well, he's practicing medicine... And you say that's not regulable because he's just speaking. I'm not saying... Is that true? I'm not saying it's not regulable, Your Honor. But wait a minute, it's practicing... You're saying that because the form of the practice of veterinary medicine here takes the form of just talking and not writing a prescription or administering a drug in some other fashion, that it enjoys First Amendment insulation from state regulation. Yes, that is exactly what the Supreme Court said in the Humanitarian Law Project. It is literally exactly the same thing. I've read the Humanitarian... I don't see that in Robert's opinion. I mean, you draw a snippet out of that particular page, but if you go back to about two pages earlier than that, I find very different analysis of what you're suggesting for humanitarian law. Well, I would respectfully suggest, Your Honor, that the question in the Humanitarian Law Project was not specifically what anyone said to the terrorists. Giving aid to the enemy, and the answer, response to it, was that we have a right to try to persuade these people for free speech to engage and to teach them about the democratic processes and so forth and so forth. And they said, well, there may be, but Congress has a right to keep you from giving them financial resources that will enable them to make the judgment that will enable them to actually spend those against you. And they upheld that. That's true, and this is critically important. We're not here in this interlocutory appeal on the merits. Now, the Supreme Court upheld the material support provision as applied to the speakers in Humanitarian Law Project, but the government's interests in Humanitarian Law Project, namely protecting the nation from murderous foreign terrorists, are different than the government's interests here. All Dr Hines wants to do is talk to loving pet owners about their pets, and if the First Amendment protects individualized legal and technical advice to foreign terrorists, surely the First Amendment protects a veterinarian speaking to a pet owner. The state regulatory board here cannot insist upon an examination of a particular animal on the basis that their judgment is that you really cannot give quality advice without having hands-on or very specific information. You maintain that that's unconstitutional, that prescription. What I maintain, Your Honor, is that... That they can't do that. What I maintain here, it's not that they can't do it, but as applied to speech alone, that is subject to the First Amendment. And as the Supreme Court said in U.S. v. Stevens, we don't... I don't know that it helps you any to say that it's analyzed in First Amendment terms when on the face of it, the justification is settled law, that the state can infringe upon whatever speech interest there may be in prescribing medical... rendering medical advice. No, Your Honor, I disagree. And I think my disagreement is that what the court... Can the state tell a doctor that you must tell this patient what the life of a fetus is at this time? The state can write a statute that says that, and that statute is subject to First Amendment analysis generally under... It may be subject to First Amendment question, but the answer has been that it is not insulated by the First Amendment because it is outside the bounds of the reach of it, because it's subject to the regulatory power of the state. Now, how do you distinguish that? Well, the way I distinguish it, Your Honor, is that the particular interests that the government has at issue in a mandatory disclosure case, which is under the First Amendment, are fundamentally different than the interests that the state has here. And ultimately... It's the quality of medicine. It's the quality of medicine. In the practice of medicine itself. The question under the First Amendment, Your Honor, is not the nature of the government's interest. The government's interest doesn't determine whether the First Amendment applies. What determines whether the First Amendment applies is whether the law is burdening speech. I'm not communicating with you. I'm sorry. I'm inarticulate here. I'm just suggesting to you that... Simply suggesting that this ought to be thought of in terms of a First Amendment issue does not answer the question of the justification of dismissal of this case. If on the face of it, here, it falls within an area that is plainly regulable by the state, sans First Amendment protection. In other words, there is no First Amendment protection here. Respectfully disagree, Your Honor. And the reason why is that the people with whom Dr. Hines speaks, as the allegations of the complaint make clear, frequently have no access to veterinary care.  You want to go far with this lawsuit. Now, what are you going to do? What are you going to say to the district court that's going to justify this that you can't say now? Well, because this is a First Amendment case, the question is not what I'm going to say. The question is what the government is going to say. Under any First Amendment burden, the government has to come forth with evidence to show that it is actually advancing a concrete interest and that its regulation is narrowly tailored. Dr. Hines did this for ten years. As the complaint shows, there are other veterinarians who do this. Presumably the government has evidence. And all we're saying is the government is required to satisfy its First Amendment burden. That's the lesson of Velazquez. That's the lesson of the Humanitarian Law Project. That's the lesson of Conant. And that's the lesson of King. Thank you. Thank you. Mr. Green, you've saved time for rebuttal. May it please the Court. The key distinction between this case and all the others that Counsel just cited was that each of those involved statutes that restricted a specific message. They were about content-based restrictions on speech. In contrast here, there is no specific message restricted by the physical examination requirement. There is no specific communication, no specific advice. Humanitarian Law Project specifically, as the Court says in plain language, was all about what was said. That's what violated the statute, not when it was said. Here, the statute restricts when something may be said. It must follow a physical examination. The First Amendment simply does not apply to incidental restrictions on speech. If you look at, again, Daley, if you look at Ford Motors, if you look at Rourke and Hardy, economic regulations that have merely an incidental impact on speech do not warrant heightened First Amendment scrutiny. And all you have to do is look at the plain language of the statute at issue here to see that it regulates veterinary medical practice, not any specific advice. Going just briefly on the Daley case, Daley, although it cited the Pickering Standard, it was not about government employee speech. It's very clear from the context of the case that it's all about the state's regulatory authority over doctor-patient communications. And a quick touch on the King case, which is a recent case out of the Third Circuit, which applied heightened scrutiny to a ban on sexual orientation therapy. The court there made clear that it was all about the content of the speech that was being restricted. They analyzed it to commercial speech cases. Again, commercial speech restrictions are content-based restrictions on advertisements, solicitations, et cetera. This is not a content-based restriction whatsoever. It's entirely content-neutral. It applies to the broad practice of veterinary medicine. And counsel can't distinguish CLE requirements or any other prerequisite to the practice of the profession. This is no different. All this is is that you must conduct a veterinary medical examination before you engage in the practice of veterinary medicine. It has an incidental impact on speech and no more, and for that reason it should not be subject to heightened First Amendment scrutiny. So in closing, unless the court has further questions, the court should reverse the district court's order and direct that court to dismiss Heinz's remaining First Amendment claims on the pleadings. All right. Thank you, Mr. Green. Your cases, all of today's cases, are under submission, and the court is in recess until 9 o'clock tomorrow.